UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **EMILY TEMAN**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**INTAKE DESK LLC**,<br><br>Defendant. | No. 1:25-cv-10647-MJJ |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Emily Teman, ("Plaintiff") respectfully submits this memorandum in opposition to Defendant's Motion to Dismiss the First Amended Complaint.

I.   **INTRODUCTION**

For several months in 2023, Intake Desk LLC ("Defendant" or "Intake Desk") flooded Emily Teman ("Plaintiff") with over a dozen telephone solicitations—which advertised legal services related to talcum powder. However, Plaintiff never consented to these calls and had no prior business relationship with Intake Desk. And critically, Plaintiff registered her telephone number on the National Do-Not-Call Registry in August 2003 (*i.e.*, nearly twenty years ago). To remedy this barrage of nonconsensual solicitations, Plaintiff brought suit on behalf of herself, and all others similarly situated ("Class Members" or the "Class").

Nonetheless, Intake Desk attempts to sidestep responsibility for its unlawful and harassing business practices. But Intake Desk's arguments are unavailing, and the Court should deny the motion for three key reasons. ***First***, Plaintiff met, and even exceeded, her pleading burden under the TCPA. ***Second***, Plaintiff has standing to pursue injunctive relief. ***Third***, dismissing or striking

1

treble damages at this early stage would be procedurally improper.

## II. FACTUAL BACKGROUND

Intake Desk markets legal services, including mass tort cases such as talcum powder litigation. (Doc No. 15 at ¶¶13, 23). As specifically alleged, Plaintiff is not and has never been a customer of Intake Desk, and she never consented to receive its calls. (Doc No. 15 at ¶24) ("Plaintiff has never been a customer of Intake Desk and never consented to receive calls[.]"). In fact, Plaintiff registered her telephone number, (508) 877-XXXX, on the National Do-Not-Call Registry in August 2003, approximately 20 years ago. (Doc No. 15 at ¶20). The number is a non-commercial line used solely for personal and household purposes. (Doc No. 15 at ¶¶16–19).

Despite this, Intake Desk flooded Plaintiff's telephone number, making more than a dozen unsolicited calls to Plaintiff over several months in 2023. (Doc No. 15 at ¶21). Further, Intake Desk left voicemails attempting to sell legal services to Plaintiff by recruiting her for talcum powder-related class actions. (Doc No. 15 at ¶¶22-23). To stop this barrage of unwanted solicitations, Plaintiff blocked the phone numbers Intake Desk used to leave her voicemails. (Doc No. 15 at ¶25). Nonetheless, the solicitations continued, and Intake Desk also began sending frequent emails. (Doc No. 15 at ¶25).

Several of the telephone solicitations originated from (877) 324-2518 and (855) 216-5126—numbers which Plaintiff has confirmed belong to Intake Desk. (Doc No. 15 at ¶22). Tellingly, in prelitigation communications, Intake Desk never denied placing the solicitation calls to Plaintiff. (Doc No. 15 at ¶25).

## III. LEGAL STANDARD

Under Rule 12(b)(6), plaintiffs need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, while allegations must "raise a right

to relief above the speculative level," detailed allegations are not required. *Id*. at 555. A claim is plausible when the facts allow the court to draw the reasonable inference that the defendant is liable for engaging in the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And courts must accept as true the factual allegations in the complaint and draw all the reasonable inferences in the plaintiff's favor. *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022).

## IV. DEFENDANT'S RELIANCE EXTRINSIC MATERIAL IS IMPROPER

At the pleading stage, the Court must accept Plaintiff's allegations as true and draw all reasonable inferences in her favor. Defendant's attempt to inject disputed facts from a separate case—and from materials outside the pleadings—cannot defeat a well-pleaded complaint under Rule 12(b)(6). *Twombly*, 550 U.S. at 555; *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71-72 (1st Cir. 2014).

Defendant relies on a supplemental brief filed in *Teman v. Select Justice, LLC*, Case No. 24-cv-12656 (D. Mass.), which is not part of the record in this case. That filing is neither attached to the motion nor incorporated by reference in the Complaint, and it is not judicially noticeable for the truth of the matters asserted. Even if considered, *Select Justice* involves materially different facts and procedural posture. That case has no bearing on whether Intake Desk made unsolicited telemarketing calls to Plaintiff in violation of the TCPA.

Moreover, Defendant mischaracterizes the status of the *Select Justice* case. (Def.'s Mot. at 2 n.1.) That litigation is still in discovery, with no dispositive motions filed. The court has not ruled on either Plaintiff's motion to compel or Defendant's cross-motion to stay. The only operative facts remain those alleged in the pleadings. In fact, Ms. Teman submitted a sworn declaration confirming that her landline is used solely for personal purposes, is not associated with

any business, and that she has never received business reimbursement or claimed business tax deductions for the number. See *Select Justice*, ECF No. 40-1 at 3.

Defendant's reliance on *Select Justice* is further undermined by that defendant's shifting and unsupported theories of consent. Initially, Select Justice claimed it never called Ms. Teman. Its own records showed otherwise—at least six calls were placed. See *id.*, ECF No. 40 at 5. It then argued Ms. Teman consented via Facebook ads related to rideshare claims, only to discover that she does not use rideshare services and the alleged consent stemmed from an IP address not associated with her. *Id.* at 1, 10–12. Select Justice now claims Ms. Teman's daughter consented on her behalf, though no evidence supports that theory, and Facebook confirmed it had no information linking the IP address to any account. *Id.* at 1, 11–13.

None of these disputed factual assertions, even if true, can be resolved on a motion to dismiss. The Court must rely on the allegations in the Complaint, not speculation from unrelated proceedings or evolving defense theories.

If Defendant intends to argue consent, shared use, or business association with the phone number, these are precisely the types of fact-intensive issues that must be tested through discovery, not assumed on a motion to dismiss.

## V.    ARGUMENT

### A.    Plaintiff properly pleaded her TCPA claim.

The First Circuit has made clear that the TCPA authorizes recovery for a range of distinct violations. *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340, 347 (1st Cir. 2022) (The TCPA "does not create a single cause of action . . . it authorizes suit and recovery for a variety of quite different acts."). Relevant here, 47 U.S.C. § 227(c)(5) creates a private right of action "for violations of the regulations pertaining to the national do-not-call phone registry." *Jones v.*

4

*Montachusetts Reg'l Transit Auth.*, No. 22-1569, 2023 U.S. App. LEXIS 35000, at *10 (1st Cir. Nov. 30, 2023). Liability arises when a defendant places calls to numbers listed on the National Do-Not-Call (NDNC) Registry. *Murray*, 55 F.4th at 343.

Plaintiff asserts a claim under § 227(c)(5), on behalf of herself and a putative "National Do-Not-Call Class." (Doc No. 15 at ¶¶29–41). The elements of which are (1) the plaintiff is a residential telephone subscriber, (2) who received more than one telephonic solicitation, (3) from the same entity, (4) within a twelve-month period, (5) to a number registered on the NDNC registry." *Murray*, 55 F.4th at 347.

Plaintiff's allegations satisfy each of these elements. (Doc No. 15 at ¶¶16–22). **First**, Plaintiff's Plaintiff alleges that her telephone number is a non-commercial residential landline, used solely for personal and household purposes, and not associated with any business. (Doc No. 15 at ¶¶16–19). **Second**, she received more than a dozen unsolicited calls, including numerous voicemails. (Doc No. 15 at ¶21). **Third**, the calls came from Intake Desk, including from numbers Plaintiff confirmed are registered to Defendant. (Doc No. 15 at ¶22). **Fourth**, the calls were made over several months in 2023. (Doc No. 15 at ¶21). **Fifth**, Plaintiff's telephone number has been registered on the NDNC Registry since August of 2003. (Doc No. 15 at ¶20).

These allegations meet, and even exceed, what is required at the pleading stage. (Doc No. 15 at ¶¶13–27). Courts in this District have consistently held that TCPA plaintiffs are not required to allege "specific calls" to survive dismissal. *Bennett v. Sunpath, Ltd.*, No. 21-11519, 2023 U.S. Dist. LEXIS 47234, at *2 (D. Mass. Mar. 21, 2023) (quoting *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 397 (D. Mass. 2017)).

Still, Intake Desk dismisses these well-pleaded allegations as "conclusions and speculation[.]" (Doc No. 17-1 at 4). But as explained below, Intake Desk's arguments contradict established precedent and ignore the text and purpose of the TCPA. (Doc No. 17-1).

### i. Massachusetts Courts Consistently Uphold Similar TCPA Claims.

In analogous TCPA cases asserting National Do-Not-Call Claims, courts in this District routinely deny motions to dismissal. For example, in *Sagar v. Kelly Auto. Grp., Inc.*, No. 21-cv-10540, 2021 U.S. Dist. LEXIS 227781 (D. Mass. Nov. 29, 2021), the plaintiff alleged that the defendant "sent at least three marketing text messages" despite his number being registered on the NDNC Registry since December 15, 2004. *Id*. at *2-3. The defendant argued that the complaint offered only "bare formulaic assertions," but the court rejected that contention outright, calling it "a non-starter." *Id*. at *16. The court held that the plaintiff's allegations, that he used his phone for personal, residential purposes and had registered it on the National Do Not Call Registry, were sufficient to survive dismissal. *Id*. (citing *Rosenberg*, 435 F. Supp. 3d at 324).

Critically, *Sagar* is one of many TCPA decisions from Massachusetts federal courts reaching the same conclusion. *See, e.g., Menin v. Star Mkts. Co.*, No. 23-cv-11918, 2024 U.S. Dist. LEXIS 161422, at *13–18 (D. Mass. Sep. 9, 2024) (denying dismissal where plaintiff received multiple text messages after requesting placement on internal do-not-call list); *Bennett*, 2023 U.S. Dist. LEXIS 47234, at *4 (D. Mass. Mar. 21, 2023) (denying dismissal where plaintiff's cell phone number was on the Do Not Call Registry); *Visco v. Creditors Relief, LLC*, No. 20-cv-12303, 2022 U.S. Dist. LEXIS 28908, at *3 (D. Mass. Feb. 17, 2022) (allegations of DNC registration and unwanted solicitation calls were sufficient); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 197, 202–03 (D. Mass. 2021) (denying dismissal based on two text messages sent to a number listed on the registry); *Scanlon v. Manscaped, LLC*, No. 20-10795, 2020 U.S. Dist. LEXIS 264925,

at *13 (D. Mass. Dec. 14, 2020) (report and recommendation adopted) (allegations of several telemarketing calls to a registered number survived dismissal); *Rosenberg v. LoanDepot.com, LLC*, 435 F. Supp. 3d 308, 313–14, 324 (D. Mass. 2020) (same); *Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506, 2019 U.S. Dist. LEXIS 162793, at *6 (D. Mass. Sep. 24, 2019) (denying dismissal where plaintiff received 13 voice calls to a registered number); *Gibbs*, 239 F. Supp. 3d at 394–97 (D. Mass. 2017) (allegations of DNC registration and "numerous telemarketing calls" were sufficient).

Simply put, these cases collectively reaffirm that Plaintiff's allegations, that the phone was for residential use, registered on the DNC, and she received repeated unsolicited calls, are more than sufficient to state a claim under § 227(c)(5). Nevertheless, Intake Desks urges the Court to disregard this well-settled Massachusetts precedent and instead rely on a selection of out-district-cases from Pennsylvania, New York, and Arizona. (Doc No. 17-1 at 4–7) (citing *Weingrad*, *Gillam*, and *Gulden*). But these cases are of limited persuasive value and factually distinguishable

For example, in *Weingrad*, dismissal was granted because the plaintiff failed to allege that he received more than one telephone solicitation. *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 23-5114, 2024 U.S. Dist. LEXIS 167980, at *5 (E.D. Pa. Sep. 17, 2024) (explaining that merely pleading "nine calls" was insufficient when plaintiff "ma[d]e no allegations about the other eight phone calls he received").

Likewise, the decision in *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) is both factually and procedurally distinguishable and does not support dismissal here. First, *Gillam* was dismissed because the plaintiff failed to allege more than **one** telephone solicitation—he answered only one call and provided no facts about the others, which were merely missed or blocked. 2023 WL 2163775, at *7–8. Here, by contrast, Plaintiff alleges

over a dozen unsolicited calls, identifies specific phone numbers, and describes voicemails offering legal services. (Doc. No. 15 at ¶¶21–23) Second, unlike the ***single vague*** reference to a "solicitation for refinancing products" in *Gillam*, Plaintiff here alleges that Intake Desk left voicemails recruiting her to participate in talcum powder mass tort litigation, and that these voicemails offered legal services, which Plaintiff never requested and which were implied to be for a fee. (*Id*. ¶23) Third, unlike in *Gillam*, where the plaintiff offered only bare assertions of "personal use," Plaintiff alleges her number is a non-commercial residential landline used solely for household purposes, with no business use or reimbursement. (Doc. No. 15 at ¶¶16–19) She has also affirmed these facts under oath in related litigation.

Finally, in *Gulden v. Consolidated World Travel Inc.,* 2017 U.S. Dist. LEXIS 23350 (D. Ariz. Feb. 15, 2017), the plaintiff provided no details about the calls or how he knew the defendant made them—offering only a bare assertion of solicitation. *Gulden*, 2017 WL 3841491, at *6–7. Here, Plaintiff identifies specific phone numbers, attributes them to Intake Desk, and describes voicemails offering legal services. (Doc. No. 15 at ¶¶21–23) These well-pleaded facts go far beyond the conclusory allegations in *Gulden*.

### ii. The TCPA Does Not Impose an "Answered" Requirement.

Intake Desk repeatedly suggests that unanswered calls cannot support a TCPA claim. (Doc No. 17-1 at 2–6).[1] But the statute contains no such requirement, and courts have consistently rejected this argument.

In doing so, Intake Desk asks the Court to fabricate a novel requirement for TCPA claims. As multiple courts have confirmed, the TCPA "does not distinguish between calls that are picked

---

[1] Counsel is unaware of any Massachusetts federal case law that addresses this particular argument. *Id*. However, other federal courts have provided clear guidance. *See infra*.

up and calls that go to voicemail." *Warnick v. Dish Network LLC*, No. 12-cv-01952, 2014 U.S. Dist. LEXIS 138381, at *47 (D. Colo. Sep. 30, 2014); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013) ("[T]he TCPA . . . does not distinguish between calls that are picked up and calls that go to voicemail . . . it is immaterial whether the Plaintiffs picked up all of Defendants' calls or whether several of the calls went unanswered.").

Courts have made clear that the violation occurs **when the call is initiated** for a prohibited purpose—**not** when it is answered. *Barry v. Firstsource Sols. USA, LLC*, No. 3:24-CV-00648, 2025 U.S. Dist. LEXIS 120555, at *6 (W.D. Ky. June 25, 2025) (quoting *Bennett v. GoDaddy.com LLC*, No. CV-16-03908, 2019 U.S. Dist. LEXIS 59766, at *22 (D. Ariz. Mar. 15, 2019)).

Similarly, as the court explained in *M.A. v. NRA Grp., LLC*, "[a] plaintiff need not show that he answered the call, or even knew about the call." No. 17-cv-7483, 2019 U.S. Dist. LEXIS 93444, at *5 (E.D.N.Y. June 3, 2019) (collecting cases). So too here, Plaintiff need not allege that she answered Intake Desks' illegal telephone calls.

Both the Ninth and Third Circuits have reached the same conclusion.  , have rejected the argument that Intake Desk now asserts. In *Barton v. JMS Assoc. Mktg., LLC*, the Ninth Circuit held that "[w]hether the call was answered is irrelevant" and that "[t]he district court therefore erred in declining to award damages for the two calls [plaintiff] failed to answer." No. 21-35836, 2023 U.S. App. LEXIS 3593, at *3 (9th Cir. Feb. 15, 2023). Similarly, in *Susinno v. Work Out World Inc.*, the Third Circuit reversed dismissal of a claim based on a single "unsolicited call on her cell phone" that "[she] did not answer[.]" 862 F.3d 346, 348 (3d Cir. 2017) (holding that plaintiff stated a claim and established standing).

Even in earlier district court decisions, courts have declined to "fabricate" an answered-call requirement not found in the statute. *See, Fillichio v. M.R.S. Assocs.*, No. 09-61629, 2010 U.S.

9

Dist. LEXIS 112780, at *6–8 (S.D. Fla. Oct. 19, 2010) (declining to "infer" an awareness or answer requirement into the TCPA's plain language). In short, the TCPA prohibits the initiation of unsolicited calls—not just those that are answered. Plaintiff need not have picked up the phone to state a claim, and dismissal on that basis should be rejected.

### iii. Intake Desk's telephone calls are "telephone solicitations."

Intake Desk's calls qualify "telephone solicitations" under the TCPA. *See* 7 U.S.C. § 227(c)(5). Courts have consistently held that calls advertising legal services, even if the attorneys are paid "on a contingency basis," fall within the statute's scope. In *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 212 (S.D.N.Y. 2024) (dismissing on other grounds), the defendant made mass calls to recruit clients for Camp Lejeune-related litigation. The defendant argued that the calls were not "telephone solicitations" because "[plaintiff] was not asked to pay for anything" and the attorneys would be paid "on a contingency basis[.]" *Id*. at 208. The court rejected the argument that such calls were exempt simply because they did not involve direct payment, holding instead that even contingency-fee arrangements involve the "purchase" of legal services through a reduced damages award. *Id*. at 212. The court explained that "Plaintiff would purchase Defendant's legal services by accepting a reduced damages award" and "a contingency fee structure . . . did not render the possibility of payment so remote or uncertain as to preclude Plaintiff from pleading that the challenged calls encouraged the purchase of legal services." *Id*. at 210–12.

Like the defendant in *Cacho*, Intake Desk seeks to recruit clients for mass tort litigation and argues that its calls were not "solicitations" because they did not sell a product and merely encouraged participation in a class action. (Doc No. 17-1 at 7). However, *Cacho* squarely rejects this argument, confirming that such "telephone calls" are still "telephone solicitations" (payment method notwithstanding). 739 F. Supp. 3d at 212.

Intake Desk's reliance on unrelated cases like *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025 is also unavailing. (Doc No. 17-1 at 7). In *Hulce*, the defendant had contacted the plaintiff about "*free* nutritional services it offered through state and Medicaid funded healthcare plan." 132 F.4th 493, 496 (7th Cir. 2025)(emphasis added). Furthermore, the case was decided at summary judgment after full discovery. *Id*. at 497-500. In sharp contrast, Intake Desk's voicemails offered legal services for which Plaintiff would be expected to pay, even if indirectly. (Doc No. 15 at ¶23). Moreover, here, Intake Desk seeks dismissal before discovery has even begun. (See generally Doc No. 17-1).

*Rockwell v. Medicus Healthcare Sols., LLC*, is also inapposite. That case involved job-recruitment calls to a physician and lacked any factual allegations about the defendant's business model. No. 24-CV-128, 2025 U.S. Dist. LEXIS 61080, at *2 (W.D.N.Y. Mar. 31, 2025). The court granted dismissal without prejudice due to "the absence of any allegations about the workings of [defendant's] business model[.]" *Id*. at *13. By contrast, here, Plaintiff alleges that Intake Desk's business model centers on mass client intake for legal services, executed through a coordinated telemarketing campaign involving calls, voicemails, and emails. (Doc No. 15 at ¶¶13, 27). Specifically, Intake Desk "launched a concerted advertising campaign soliciting plaintiffs for legal services" that are "related to talcum lawsuits."(Doc No. 15 at ¶¶23, 27). These detailed allegations support the reasonable inference that Intake Desk's calls were made to promote paid legal services—and therefore qualify as telephone solicitations under the TCPA. Dismissal is unwarranted.

### iv.    Dismissal with prejudice would be improper.

Intake Desk asserts that "amendment would be futile" and "the Complaint should be dismissed with prejudice." (Doc No. 17-1 at 8). However, the First Circuit is clear that "[t]he Civil

Rules take a liberal stance toward the amendment of pleadings, consistent with the federal courts' longstanding policy favoring the resolution of disputes on the merits." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Thus, dismissal with prejudice would be improper. *See, e.g., Town of Princeton v. Monsanto Co.*, 202 F. Supp. 3d 181, 197 (D. Mass. 2016) ("Nonetheless, because the Court cannot conclude that amendment would be futile, the claim is dismissed without prejudice."); *Kelley v. Mass. Bay Transp. Auth.*, No. 1:16-CV-11634, 2017 U.S. Dist. LEXIS 225066, at *3 (D. Mass. Sep. 5, 2017) ("[T]his court cannot state categorically that any amendment to the complaint would be futile, this court recommends that the dismissal be without prejudice.").

### B.     Plaintiff has standing to pursue injunctive relief.

Section 227(c)(5)(A) of the TCPA enables plaintiffs to bring "an action based on a violation of the regulations prescribed under this subsection to enjoin such violation[.]" 47 U.S.C. § 227(c)(5)(A); *see also Orange Chiropractic Ctr., LLC v. Cayan LLC*, No. 15-13069, 2016 U.S. Dist. LEXIS 49067, at *9 (D. Mass. Apr. 12, 2016) ("The TCPA provides a private right of action for injunctive . . . relief."). Here, Plaintiff seeks injunctive relief under § 227(c)(5)(A) because she alleged that the TCPA violations are "ongoing[.]" (Doc No. 15 at ¶27). For one, even after Plaintiff "blocked all of the phone numbers that Defendant's representatives used to leave voicemails for her, the phone calls decreased in frequency but still continued." (Doc No. 15 at ¶25).

The ongoing nature of Intake Desk's "concerted advertising campaign" is underscored by the allegations that "Intake Desk also still frequently sends emails to Plaintiff." (Doc No. 15 at ¶25). At this early stage, these allegations are sufficient. *See Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, No. 6:24-cv-00243, 2024 U.S. Dist. LEXIS 175344, at *16 (D. Or. Sep. 27, 2024) (holding that plaintiffs "sufficiently allege an imminent risk of future harm that entitles them to injunctive

relief" because "'it is plausible that [plaintiffs] may receive additional calls in the future,' particularly where, as here, a defendant has made no assurances that it will abstain from the allegedly wrongful conduct") (quoting *Sasin v. Enter. Fin. Grp.*, No. CV 17-4022, 2017 U.S. Dist. LEXIS 229459, at *20 (C.D. Cal. Nov. 21, 2017)). Thus, Plaintiff should not be precluded from seeking injunctive relief at this early stage.

### C. Dismissing or Striking Treble Damages is Procedurally Premature.

Plaintiff properly pleaded treble damages such that dismissing or striking treble damages would be premature. (Doc No. 15 at ¶¶20–27). Courts have explained that requests to dismiss or strike requests for treble damages are "procedurally premature" at the motion to dismiss stage. *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 284 (S.D.N.Y. 2024). After all, "[w]hether [plaintiff] can adduce evidence sufficient to support an award of treble damages cannot be resolved until after discovery, either on a motion for summary judgment or at trial." *Id.*; *see also Bagwell v. Reece Builders E. Coast Div., LLC*, No. 0:24-cv-60149, 2024 U.S. Dist. LEXIS 119570, at *11 (S.D. Fla. July 8, 2024) ("Because the TCPA speaks to a remedy which may be awarded in the Court's discretion upon finding that Defendant acted 'willfully' or 'knowingly,' it would be inappropriate at the motion to dismiss stage to exclude the possibility of the Court later making such a finding based on additional facts to support Plaintiff's allegations.") (internal quotation omitted). Additionally, treble damages are "a form of damages, not an independent cause of action" so a request for treble damages cannot be dismissed in the same way a cause of action can be. *Id.* (quoting *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 Civ. 8779, 2017 U.S. Dist. LEXIS 189902, at *27 (S.D.N.Y. Nov. 16, 2017)).

Here, Plaintiff plausibly alleged that Intake Desk violated the TCPA "willfully" or "knowingly" given that she received "more than a dozen telephone solicitations" despite having

"listed her telephone number on the National Do Not Call Registry in August of 2003" and despite having taken affirmative steps to "block[] all of the phone numbers that Defendant's representatives used to leave voicemails[.]" (Doc No. 15 at ¶¶20–25). Moreover, Plaintiff seeks to determine "whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telep[hone solicitations in violation of the TCPA's do-not-call regulations." (*Id.* at ¶33(b)). At this early stage, these allegations are sufficient. *See, e.g., Ewing v. Freedom Forever, LLC*, No. 23-CV-1240, 2024 U.S. Dist. LEXIS 10197, at *26 (S.D. Cal. Jan. 19, 2024) (declining to dismiss Plaintiff's TCPA claims seeking treble damages where the plaintiff alleged that "his cell phone number is on the federal do-not-call list and has been since 2012"); *Poonja v. Kelly Servs.*, No. 20-cv-4388, 2021 U.S. Dist. LEXIS 186809, at *9–10 (N.D. Ill. Sep. 29, 2021) (holding that "striking the claim for treble damages would be premature" because the plaintiff alleged that "[d]efendant failed to implement proper procedures" regarding the TCPA and "[a]ccepting that allegation as true . . . the Court cannot say that it excludes the possibility of willful conduct").

## VI. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety. If the Court grants any portion of Defendant's motion, then Plaintiff respectfully seeks leave to amend.

Dated: July 16, 2025

                    Respectfully submitted,

                    By: */s/Cassandra P. Miller*

                    Cassandra P. Miller (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago Illinois, 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com

Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
T: (617) 485-0018
F: (508) 318-8100
anthony@paronichlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2025, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: July 16, 2025

Respectfully submitted,

By: */s/ Cassandra P. Miller*

Cassandra P. Miller (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago Illinois, 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com